[No. 37512-1-I. Division One. September 22, 1997.]

FIDELITY & DEPOSIT COMPANY OF MARYLAND,
*Appellant*, v. TICOR TITLE INSURANCE COMPANY,
*Appellant*, AFFILIATED MORTGAGE COMPANY,
*Respondent.*

*Alexander A. Friedrich* of *Yusen & Friedrich*, for appellant Fidelity & Deposit Co.

*Stephen J. Sirianni* and *Ann E. Merryfield* of *Sirianni & Youtz*, for appellant Ticor Title Ins. Co.

*Alexander J. Higgins* of *Stokes, Eitelbach & Lawrence, P.S.*, for respondent.

GROSSE, J. — Affiliated Mortgage Company of Texas (Affiliated) holds a valid note and deed of trust to the property of William and Mary Etter. Fidelity & Deposit Company of Maryland (Fidelity) holds a deed of trust and a forged note with respect to the same property. The Etters are not in default on the valid note. The dispute between Affiliated and Fidelity over which has superior rights to the security is easily resolved on the simple proposition that one holding a forged instrument has no rights as against the holder of the valid instrument. The trial court is affirmed.

At summary judgment, the parties filed a joint statement of undisputed facts. Those facts are as follows:

On March 5, 1992, William and Mary Etter executed and delivered a $146,000 promissory note, secured by a deed of trust, to Citizen's National Mortgage (Citizen's). Citizen's sold the note to Affiliated and gave an assign-

ment of deed of trust to Affiliated on April 1, 1992. The Etters admit that Affiliated's note bears their correct signatures and is a valid promise to pay. Affiliated recorded its assignment of deed of trust on October 12, 1992. Later (than the April 1 sell date to Affiliated) in 1992, Citizen's forged the Etters' names on another promissory note, and sold it, along with another, identical assignment of deed of trust to Home Federal Savings and Loan Association of Nebraska (Home Federal). (Home Federal was insured by Fidelity who received Home Federal's rights by assignment.) Fidelity does not dispute that the note it possesses was forged. Affiliated does not contend that Home Federal or Fidelity had any notice of the forgery or any notice of Affiliated's prior interest. On July 15, 1992, Home Federal recorded its assignment of deed of trust, which was prior to the time that Affiliated recorded its assignment of deed of trust.

Fidelity, as Home Federal's assignee, filed suit against Affiliated and Ticor Title Insurance Company (Ticor Title) claiming that as a bona fide purchaser of the assignment of the deed of trust it had superior rights to those of Affiliated, which failed to record its interest, and that it was entitled to the proceeds from the loan. Affiliated filed a cross-motion for summary judgment arguing that the recording statute cannot give life to a forged and invalid note. The trial court granted Affiliated's motion and denied Fidelity's motion for declaratory relief. The court entered judgment in favor of Affiliated and decreed that Affiliated is entitled to priority over the collateral and to collect all the payments made by the Etters. We apply the usual standard of review to Fidelity's and Ticor's appeal.

Fidelity claims that it was entitled to rely on the public record, that the real property recording statute, RCW 65.08.070, protects it.[1] The recording statute makes it clear that if the record owner of a mortgage assigns the same

---

[1]*Levien v. Fiala*, 79 Wn. App. 294, 902 P.2d 170 (1995).

mortgage to two different purchasers, the first to record acquires the prior right because "a purchaser of a recorded mortgage, of which there is no assignment of record, has a right to assume that no such assignment has been made."[2] Fidelity claims it is entitled to the protection of the recording statute because Home Federal purchased without any notice of the previous assignment, and thus was a bona fide purchaser.

Additionally, Fidelity argues that the equities of the situation must be determined in its favor as "[w]here a loss which is occasioned by the wrongful act of a third party must fall upon one of two innocent persons, the one whose conduct made the loss possible must bear it."[3] Because Affiliated could have avoided the predicament by recording its assignment, Fidelity claims Affiliated must bear the loss.

Fidelity asserts the forgery of the note is irrelevant.[4] It claims the note only evidences the debt, and the assignment of the deed of trust to Home Federal was valid because it was not a forgery. Because there was no forgery in its assignment, and because the Etters do not deny that they owe the money under a valid promissory note, Fidelity claims the right to the payments because of its first recorded assignment.

 Contrary to Fidelity's assertions, the forgery does matter. The assigned mortgage declared it was given as security for payment of the promissory note dated March

---

[2]*Berger v. Baist*, 165 Wash. 590, 594, 6 P.2d 412, 89 A.L.R. 164 (1931); *see Hendricks v. Lake*, 12 Wn. App. 15, 20-21, 528 P.2d 491 (1974), *review denied*, 85 Wn.2d 1004 (1975).

[3]*Ross v. Johnson*, 171 Wash. 658, 667, 19 P.2d 101 (1933); *see also, Paganelli v. Swendsen*, 50 Wn.2d 304, 308, 311 P.2d 676 (1957).

[4]*Price v. Northern Bond & Mortgage Co.*, 161 Wash. 690, 297 P. 786 (1931) (assignee of deed of trust, who never received delivery, endorsement or assignment of relevant promissory note, had priority over earlier assignee that held the endorsed note but failed to record the assignment).

5, 1992. If the obligation for which the mortgage was given fails for some reason, the mortgage is unenforceable.[5]

In addition, Affiliated is the party in possession of the valid note. Two treatises in this area are helpful and instructional.[6]

> Where the assignee of a mortgage securing a negotiable note fails to record the assignment but gets and keeps possession of the note, he or she should, and by what is believed to be the better authority, does prevail over a subsequent purchaser of the mortgage from its record owner. The reason is substantially the same one that should leave the purchaser of the secured negotiable note free to ignore prior recorded assignments of the mortgage, namely that the principal thing that is being bought is the note itself, not its accessory, the mortgage. At least that is the controlling thought and should prevail in determining the rules governing the priorities of the parties who take successive assignments of it. Commercial policy in the free mobility of the debt is more important in a case of this sort than the policy underlying the recording acts.

> . . . And it follows that an assignee who gets and holds onto the negotiable note and mortgage, although running some risks if the assignment is not recorded, should not run the hazard of losing to a subsequent assignee from the assignor.[7]

Further, as stated in THOMPSON ON REAL PROPERTY:

> [U]nder the maxim that the mortgage follows the debt, the holder in due course should also have the benefit of the mortgage regardless of whether the holder has recorded an assignment of the mortgage. Likewise, the law of negotiable instruments rather than of property should operate to confer

---

[5]*Anderson v. County Properties, Inc.*, 14 Wn. App. 502, 503, 543 P.2d 653 (1975); *Koster v. Wingard*, 50 Wn.2d 855, 314 P.2d 928 (1957); *see also, George v. Butler*, 26 Wash. 456, 467-68, 67 P. 263 (1901).

[6]1 GRANT S. NELSON & DALE A. WHITMAN, REAL ESTATE FINANCE LAW § 5.34, at 458-62 (3d ed. 1993); 12 THOMPSON ON REAL PROPERTY, THOMAS EDITION § 101.05(b)(2)(i) & (ii), at 434-38 (David A. Thomas ed., 1994).

[7]1 NELSON & WHITMAN, *supra* note 6, § 5.34, at 461-62 (footnotes omitted).

priority to a prior holder in due course of a note secured by a mortgage over a later assignee who acquired only a copy of the note.[8]

Fidelity's claim that it could foreclose on the Etters' property in the event of a default is not correct. Under RCW 61.24.030(3) the default must occur on the obligation secured. It is the default that gives rise to the power to sell. But the Etters have an absolute defense to any foreclosure action brought by Fidelity based on the note Fidelity received. They are not in default on the note they gave. The recording statute cannot make valid the invalid note Home Federal/Fidelity received. Stated another way, the mere recording of an instrument cannot create legal obligations to pay where none existed before.

Citizen's had no remaining interest at the time of its conveyance to Home Federal. A forged signature on a promissory note cannot create a valid, enforceable obligation against the purported maker. As stated in *Lewis v. Kujawa*,[9] "[O]ne holding under a forged instrument, however ignorant he may be of the forgery or how much of value he may have parted with in reliance on the genuineness of the instrument, cannot claim protection against the title of the rightful owner on the ground that he is an innocent purchaser in good faith and for value."

The decision of the trial court is affirmed.

WEBSTER and BECKER, JJ., concur.

---

[8]12 THOMPSON ON REAL PROPERTY, *supra* note 6, § 101.05(b)(2)(ii), at 437 (footnote omitted).

[9]*Lewis v. Kujawa*, 158 Wash. 607, 617, 291 P. 1105 (1930).